Donald LAWSON, Executor of the Estate of Robert E. Lawson, Dorothy Lawson Petrie, Kathryn Bond and Pamela McDannold, Appellants,

v.

Kirby LOID, Sr., and Thomas E. Loid, Co–Guardians for Frances R. Petrie, Appellees.

No. 94–SC–60–DG.

Supreme Court of Kentucky.

Feb. 16, 1995.

As Modified on Denial of Rehearing May 11, 1995.

Reginald L. Ayers, Timothy L. Edelen, Bell, Orr, Ayers & Moore, Bowling Green, for appellants.

W. Currie Milliken, Milliken Law Firm, Bowling Green, for appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed the judgment of the trial court which had declared the prenuptial agreement to be valid.

The principal issue is which party has the burden of proof on the question of full disclosure of assets at the time the agreement was signed. Other issues involve the possible waiver or failure to preserve an argument regarding the burden of proof on the disclosure issue and whether the evidence otherwise establishes the validity of the claims. The specific question is whether the prenuptial agreement between Robert Petrie and Frances Petrie was valid and enforceable.

Robert and Frances Petrie were married on December 13, 1952. Both had previously been married and Robert had four children

from his prior marriages. Frances did not have any children. On the day of the marriage, Frances and Robert executed a "marriage contract" which provided for a $1,000 settlement of any claims for dower or maintenance. The parties were married for 37 years until Robert died. Frances is still alive but she has been diagnosed as having Alzheimer's disease and was declared legally incompetent prior to his death.

The husband's will was offered for probate and it provided that the wife would get only a life estate in the household furnishings and goods. The remainder of the estate was devised to his four children. The two nephews of the wife were appointed as her co-guardians at the time of the husband's death and they elected to renounce the will and take the statutory share of the wife. The husband's estate offered the marriage contract as a defense to renunciation. This action was filed in circuit court seeking a declaration of rights under the contract.

The circuit judge ruled that the prenuptial agreement was valid and enforceable. He found that the estate of the wife had failed to present any competent or relevant testimony proving that the husband had not made a full disclosure concerning his financial condition at the time of the marriage and execution of the agreement. He also specifically found that the wife was aware of the husband's financial conditions at the time of the marriage because she had worked as a bookkeeper in one of his businesses. The Court of Appeals reversed stating that the trial judge had applied the wrong burden of proof standard on the question of full disclosure. This Court granted discretionary review.

The evidence in this case shows that there is no element of the unconscionable at the time of enforcement of the agreement. The wife has income in excess of $6,300 per month from various investments. The evidence indicated that at the time of the death of the husband, his estate had a value of between $2.5 and $4 million and the estate of the wife was valued at approximately $1 million. There was evidence that the parties maintained separate bank accounts throughout the marriage.

The principal issue is who had the burden of proof as to the validity and enforceability of the prenuptial agreement. It has long been the law in Kentucky that prenuptial agreements, which are intended to take effect at the death of one of the parties, are valid and favored by the law. *Hardesty v. Hardesty Adm'r*, 236 Ky. 809, 34 S.W.2d 442 (1931). This legal principle has been recognized and applied to agreements made in contemplation of divorce or dissolution of marriage. *Gentry v. Gentry*, Ky., 798 S.W.2d 928 (1990); *Edwardson v. Edwardson*, Ky., 798 S.W.2d 941 (1990). The law is clear that the burden of proof regarding the question of full disclosure of assets at the time of the agreement rests on the party relying on the agreement. *Harlin v. Harlin*, 261 Ky. 414, 87 S.W.2d 937 (1935). *See also Luck v. Luck*, Ky.App., 711 S.W.2d 860 (1986); *Potter's Executor v. Potter*, 234 Ky. 769, 29 S.W.2d 15 (1930); *Brown v. Brown*, Ky., 265 S.W.2d 484 (1954).

The question of fraud which like duress, mistake or misrepresentation could invalidate such an agreement is not present in this case. Neither the inequity of the prenuptial agreement, nor the difference between the allowance for the wife and the financial condition of the husband can be regarded as amounting to fraud. *Brown v. Brown*, Ky., 265 S.W.2d 484 (1954).

In this case, there was a $1,000 payment from the husband to the wife for her agreement to release rights of dower even though the parties did not mutually release rights in the estates of each other. *Cf. Ray v. Ray's Extr.*, 249 Ky. 347, 60 S.W.2d 935 (1933).

Here, the wife did have income and some assets at the time of the execution of the agreement, and the sum of $1,000, when considered by 1952 economic standards, was not inequitable from what the husband could have expected to receive from her estate if she died soon after the agreement. Therefore the question of mutuality as raised by *Ray, supra*, is satisfied.

In such agreements, the wife must be fully apprised of the extent and nature of the estate and value of what she is surrendering in the agreement. Here the trial judge cor-

rectly found as a matter of fact that the required disclosure was complete.

In this case the trial judge sat without a jury and heard the evidence. The findings of the trial judge may not be set aside unless clearly erroneous with due regard being given to the opportunity of the trial judge to consider the credibility of the witnesses. CR 52.01. *Cherry v. Cherry*, Ky., 634 S.W.2d 423 (1982); *Reichle v. Reichle*, Ky., 719 S.W.2d 442 (1986). A review of the evidence clearly shows that the wife was aware of the husband's assets prior to the execution of the agreement. The wife was an educated woman who had been previously married and divorced. Prior to the marriage, the wife had worked as a bookkeeper in the Buick dealership owned by the husband. The evidence indicates that during the entire marriage both parties kept separate bank accounts.

In this case there is substantial evidence to support the decision of the trial judge and his findings cannot be considered clearly erroneous.

It is the holding of this Court that the burden of proof on the issue of full disclosure of assets at the time the agreement was signed in a prenuptial contract rests on the party relying on such agreement. The decision of the Court of Appeals is reversed and the judgment of the circuit court is reinstated.

STEPHENS, C.J., LAMBERT, REYNOLDS and SPAIN, JJ., and PAUL MURPHY, Special Justice, concur.

LAMBERT, J., also concurs by separate opinion in which REYNOLDS and SPAIN, JJ., join.

STUMBO, J., dissents.

LAMBERT, Justice, concurring.

The opinion of the Court correctly observes that antenuptial agreements are favored, provided the requirements of the law are met. A principal requirement is disclosure, but deciding precisely what disclosure is sufficient has been troublesome. At one extreme parties would be required to make written disclosure of every asset together with appraised values. At the other extreme, a vague oral disclosure in which the parties provided one another with some general information would be sufficient.

We have heretofore said that the law favors antenuptial agreements, but as a practical matter, the more complete the disclosure which is required, the greater the likelihood that the agreement will ultimately be held invalid. A requirement of precise disclosure would therefore defeat what has been determined to be sound public policy. On the other hand, if we uphold agreements on the basis of just "any old disclosure," then the disclosure requirement will have been essentially eliminated from the law.

A better approach would be to borrow from our decision in *Chenault v. Chenault*, Ky., 799 S.W.2d 575 (1990), which dealt with the precision required for tracing non-marital assets upon dissolution of a marriage. *Chenault* recognized that precision of asset tracing might be appropriate for skilled business persons, but would be inappropriate and disadvantageous to those of lesser business skills or those essentially indifferent to such matters. To soften some of the possible inequity, *Chenault* declared that mathematical certainty with respect to tracing would not be required.

Accordingly, we shall adhere to the general requirement that nonmarital assets be traced into assets owned at the time of dissolution, but relax some of the draconian requirements heretofore laid down. We take this position, in part, in reliance upon the trial courts of Kentucky to detect deception and exaggeration or to require additional proof when such is suspected.

*Id.* at 579.

There is sufficient analogy between the process of tracing assets in the course of dissolving a marriage and reviewing evidence as to the extent of disclosure made at the time of an antenuptial agreement. Both require fact finding based on what may be stale evidence of distant events. As such, the trial courts of this Commonwealth should be granted considerable discretion to determine whether disclosure was adequate to support the agreement. Such agreements should not

be held invalid unless there appears to have been deception, fraud or material omission.

REYNOLDS and SPAIN, JJ., join this concurring opinion.