# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JANUARY 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0195-MR

WILLIAM HARRIS                                              APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HON. ANGELA MCCORMICK BISIG, JUDGE
NOS. 19-CR-002071-001 & 22-CR-000317

COMMONWEALTH OF KENTUCKY                             APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

This appeal comes before the Court as a matter of right[1] from the Jefferson Circuit Court, where Harris was convicted of murder, felon in possession of a handgun, and being a persistent felony offender in the first degree. He was sentenced to thirty-five years in prison. The only issue presented is whether the Commonwealth violated discovery rules by failing to provide Harris with enhanced or magnified surveillance video used at trial, when the original unenhanced or unmagnified video was disclosed. Finding no abuse of discretion, we affirm the convictions.

## I.    Facts

On July 11, 2019, Harris and a friend drove to the St. Williams Apartments in Louisville. A woman, Kiara Graves, recognized the red Dodge Charger Harris and his friend were in. She walked up to converse with them.

---

[1] Ky. Const. § 110(2)(b).

Jermaine Thompson was also near the car. Graves heard Thompson and Harris argue about whether Thompson had killed a man identified as "Reece." The argument escalated, and Harris told Graves to move, at which point he began shooting Thompson. Thompson retreated to a nearby alley. Graves testified Harris followed him into the alley, and although she did not see it, she heard several more shots fired. Thompson died at the scene. Harris and his friend drove off in the red Charger.

Graves did not immediately inform police about her knowledge of the shooting. It was not until a few weeks afterward that she came forward. Graves identified Harris as the shooter, and he was arrested on July 29, 2019.

At trial, the Commonwealth introduced video surveillance footage from a nearby complex that shows the red Charger in the upper left corner of the video and a group of people gathered around it. The Commonwealth concedes that the footage is out-of-focus, and it is not possible to identify any persons from the video. Later, the Commonwealth stated its intent to introduce an enhanced or magnified portion of the video showing the red Charger. Defense counsel objected, arguing the video had been manipulated because there was a change in the pixelation. The trial court overruled the objection, concluding the enhanced video simply magnified a portion of the original video that had been disclosed and no substantive change to the content of the video had occurred. In other words, to quote the trial court, "this is just basically a zoom-in. And I think a zoom-in of a video that is already in the record is not a changed or different exhibit."

Important to our conclusion is that the enhanced video was not admitted into evidence. In fact, the jury sought to review the enhanced video during deliberation, but the trial court refused and only allowed them to view the unmagnified video that had been admitted into evidence without objection. Another important fact to note is the Commonwealth's concession that "the focus on the magnified footage has not been sharpened and it is still not possible to identify anyone by their facial features."

## II.    Analysis

Evidentiary rulings of a trial court are subject to an abuse of discretion standard of review. *Mason v. Commonwealth*, 559 S.W.3d 337, 342 (Ky. 2018). The Rules of Criminal Procedure provide a trial court may order "the Commonwealth to permit the defendant to inspect and copy or photograph books, papers, documents, data and data compilations or tangible objects or copies or portions thereof, that are in the possession, custody or control of the Commonwealth . . . ." RCr 7.24(2).

Harris relies on *Brady v. Maryland*, 373 U.S. 83 (1963) and cases based on *Brady* for his argument. *Brady* stands for the rule that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. We reject its application to this context. There is no evidence that has been suppressed by the Commonwealth. Indeed, we have held that "*Brady* only applies to 'the discovery, *after trial*, of information which had been known to

3

the prosecution but *unknown to the defense.*'" *Bowling v. Commonwealth*, 80 S.W.3d 405, 410 (Ky. 2002) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). There is nothing about the enhanced video that constitutes information known to the Commonwealth but unknown to the defendant, nor did this discovery occur after trial. We have also stated that *Brady* "turns on fair disclosure and does not create the right to discovery in a criminal trial." *Taylor v. Commonwealth*, 611 S.W.3d 730, 738 (Ky. 2020) (citing *Bowling*, 80 S.W.3d at 410). Finally, we are reluctant to characterize this evidence as "favorable to the accused," *United States v. Bagley*, 473 U.S. 667, 675 (1985), since the video does not enable personal identification of any persons recorded. It is certainly not exculpatory, and it is difficult to say that it constitutes "impeachment evidence" of a Commonwealth witness. *Id.* That observation aside, the fact that the video in dispute is merely a magnified portion of a video that had already been disclosed to Harris means that *Brady* is inapplicable. *Bowling*, 80 S.W.3d at 410.

Since *Brady* does not apply the only question is whether the trial court abused its discretion in allowing the video to be shown at trial. Crucial to that analysis is that the enhanced video was not admitted into evidence, and it was refused to the jury during their deliberations. The trial court explicitly stated it was a demonstrative exhibit only. After review of the cited portions of the record, we agree with the Commonwealth that the enhanced video was only

4

shown during the Commonwealth's closing arguments.[2] That being the case, we simply cannot conclude that the trial court's actions were arbitrary or unsupported by sound legal principles.

Demonstrative exhibits shown to the jury but not admitted into evidence are only subject to basic rules of relevance under KRE[3] 403. But this specific exhibit was merely a magnified part of a video that had been admitted into evidence. There is no argument that the original video was irrelevant or more prejudicial than probative. Critically, the enhanced portion did not make personal identification possible, therefore, we cannot say its portrayal as an exhibit during closing arguments was more prejudicial than probative; nor that the Commonwealth's failure to disclose the video prior to trial violated RCr 7.24(2) since the original video was disclosed to Harris.

Harris' convictions are affirmed.

VanMeter, C.J.; Conley, Keller, Lambert, Nickell and Thompson, JJ., sitting. All concur. Bisig, J., not sitting.

---

[2] Harris alleges that the enhanced video was shown three times throughout trial but gives only one citation to the video record for that statement. After review, the cited portion of the record only pertains to an issue where apparently the jury had asked if they could get closer to the screen to review the evidence. The correct portion of the record—which we were under no obligation to find, *Dennis v. Fulkerson*, 343 S.W.3d 633, 637 (Ky. App. 2011)—reveals defense counsel at trial conceding that the enhanced video was only shown during closing statements. In another portion of the brief, it is averred the enhanced video was played "during police testimony," but there is no citation to the record for support. We ignore statements unsupported by the record. *National Life & Acc. Ins. Co. v. Bond*, 351 S.W.2d 55, 56 (Ky. 1961).

[3] Kentucky Rules of Evidence.

COUNSEL FOR APPELLANT:

Adam Meyer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General